IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | |
| AYAZ KHAN, | ) | No. 1:17-cr-148 (LMB) |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

After oral argument on defendant's Motion to Dismiss the Indictment [Dkt. No. 28], the motion was denied. This Memorandum Opinion explains in more detail the reasons for that decision.

### I. BACKGROUND

Defendant Ayaz Khan ("Khan" or "defendant") is charged with one count of illegal reentry after deportation or removal, in violation of 8 U.S.C. § 1326(a). Khan was initially removed from the United States in 2011. This removal sprung from his 2010 guilty pleas in the Prince William County Juvenile and Domestic Relations District Court to two separate charges of assault and battery and assault and battery on a family member. Def. Mem. [Dkt. No. 28] 1-2.[1] In one incident, he slapped his wife and threw a tea kettle at her and, in the other, he grabbed her neck and attempted to choke her. Gov't Opp. 2. Based on these convictions, the Department of Homeland Security initiated removal proceedings against Khan, on the ground that he was removable under a variety of provisions of the Immigration and Nationality Act. Def. Mem. 2.

---

[1] Although Khan's deportation was based on these two convictions, Khan's history of domestic violence and other legal troubles stretched back to at least 2001, when he was arrested for assault and battery against a woman whom he later married. Gov't Opp. [Dkt. No. 30] 2. Since 2001, Khan has accumulated at least eighteen arrests and ten criminal convictions for a variety of offenses. Id.

Represented by counsel, Khan filed a response admitting the two convictions but challenging each charge of removability. Gov't Opp. 3. In August 2010, an immigration judge ("IJ") heard argument over two days from Khan's counsel and the government. See id. At the second hearing, the IJ orally sustained one of the charges of removability, finding by clear and convincing evidence that Khan's convictions constituted crimes involving moral turpitude. See id.; Def. Mem. 2.

To reach this finding, the IJ employed the three-step modified categorical analysis prescribed by the Attorney General in In re Silva-Trevino, 24 I. & N. Dec. 687 (A.G. 2008), vacated, In re Silva-Trevino, 26 I. & N. Dec. 550 (A.G. 2015). Under this analysis, the IJ was first required to determine whether the statute of conviction could realistically reach conduct that did not involve moral turpitude. See id. at 698. If the statute could reach such conduct, then the IJ was required to examine the record of conviction to determine whether it established that the defendant's conduct involved moral turpitude. Id. at 698-99. If the record of conviction was indeterminate, then the IJ was required to examine additional evidence if "necessary and appropriate" to determine whether the conviction was based on morally turpitudinous conduct. Id. at 699-700.

In Khan's case, both parties agreed that the statutes of conviction could be applied to conduct that did not involve moral turpitude. See Def. Mem. Ex. B, at 2. Therefore, the IJ turned to the second Silva-Trevino step, examining the record of conviction. See id. The only potentially relevant document was the criminal complaint, which established the factual circumstances underlying both convictions; however, the parties disputed whether the complaint actually constituted part of the record of conviction. Id. at 2-3. Rather than resolve that dispute, the IJ moved to the third Silva-Trevino step, allowing him to consider the complaint even

assuming it was outside the record of conviction. Id. at 3. Under the third step, the IJ found that the complaint established by clear and convincing evidence that Khan's two convictions involved moral turpitude. Id. at 3 (citing In re Sanudo, 23 I. & N. Dec. 968, 971-72 (B.I.A. 2006) (holding that the infliction of bodily harm upon a person deserving of special protection, such as a domestic partner, is morally turpitudinous)).

At that hearing, the IJ and Khan's counsel had the following exchange:

IJ: So, I'd have to agree with the government that the charge is correct. That said, how do you want to proceed with the rest of the case?

Khan's Counsel: Well, your Honor, I would like to appeal that decision.

Judge: Sure. Well, I mean . . .

Khan's Counsel: You mean cancellation [of removal], your Honor? Yes, your honor . . . .

Gov't Opp. 3, Ex. B.

After the IJ determined Khan was removable, the proceedings continued to address Khan's request for cancellation of removal. In November 2010, the IJ entered a written decision explaining his previous oral ruling concerning Khan's removability and also holding that Khan had shown that he was eligible for cancellation of removal, Def. Mem. 2, Ex. B; however, in July 2011, the IJ denied Khan's application for cancellation of removal and ordered him removed. Id. at 2, Ex. C. Khan did not seek administrative or judicial review of any of these decisions and, on September 20, 2011, he was deported to Pakistan. Gov't Opp. 4-5; Def. Mem. Ex. D.

In August 2015, Khan, represented by counsel, filed a motion to reopen his removal proceedings, in which he argued that his proceedings should be reopened because of a change in the law, citing to Prudencio v. Holder, 669 F.3d 472, 484 (4th Cir. 2012). See Gov't Opp. 5, Exs. E, F, G. In Prudencio, which was decided after Khan was deported, the Fourth Circuit rejected

3

the third Silva-Trevino step and directed courts to limit their modified categorical review to only the record of conviction. According to the Fourth Circuit, because the underlying statutory language that Silva-Trevino purported to interpret "unambiguously directs that an adjudicator consider only the conviction itself, and not any underlying conduct," Silva-Trevino's direction to consider documents outside the record of conviction constituted an invalid exercise of the Attorney General's authority. See Prudencio, 669 F.3d at 482. In 2015, after a circuit split had developed on whether adjudicators should follow the Silva-Trevino framework, the Attorney General vacated the Silva-Trevino decision. See In re Silva-Trevino, 26 I. & N. Dec. at 552-53. The IJ rejected both Khan's motion to reopen and his later motion to reconsider the rejection of the motion to reopen because they were filed well outside the authorized time limits[2] and Khan had not established good cause for the delay. See Gov't Opp. 5-6, Exs. H, I. Khan's appeal of the IJ's ruling is currently pending at the Board of Immigration Appeals. See id. at 6, Ex. J.

In June 2017, Khan was found in the United States and arrested. On June 22, 2017, a grand jury returned an indictment charging him with one count of illegal reentry after deportation or removal, in violation of 8 U.S.C. § 1326(a). [Dkt. No. 15]. Specifically, the indictment alleged that Khan was removed from the United States on September 20, 2011, did not obtain the consent of the Attorney General or the Secretary of Homeland Security to reapply for admission to the United States, and was found within the Eastern District of Virginia on June 4, 2017. See id. After Khan's Motion to Dismiss the Indictment was denied, he proceeded to a bench trial on a stipulated record,[3] in which the parties stipulated, and the Court found, that:

---

[2] A motion to reopen must be filed within ninety days of the date a removal order is entered. See Gov't Opp. Ex. H, at 2 (citing 8 U.S.C. § 1229a(c)(7)(C)(i)).
[3] At the bench trial, Khan acknowledged, and the Court found, that he had knowingly and voluntarily stipulated to these facts.

4

1. The defendant, Ayaz Khan, is the same individual who was removed from the United States on or about September 20, 2011 and later was found within the Eastern District of Virginia on or about June 4, 2017.

2. Ayaz Khan is an alien, a citizen of Pakistan, and has never been a citizen of the United States.

3. Ayaz Khan entered the United States voluntarily sometime after he was removed on or about September 20, 2011.

4. Ayaz Khan did not apply for permission to reenter the United States before entering the United States sometime after September 2011 and did not obtain the consent of either the Attorney General of the United States or the Secretary of the Department of Homeland Security to reenter the United States.

[Dkt. No. 46]. The parties agreed that nothing in those stipulations precluded defendant from challenging the validity of his deportation order pursuant to 8 U.S.C. § 1326(d) or appealing an adverse decision regarding such a challenge. Based on the stipulation of facts, which established all necessary elements of illegal reentry, the Court found defendant guilty of illegal reentry in violation of 8 U.S.C. § 1326(a). [Dkt. No. 45].

## II. DISCUSSION

Because the stipulation of facts established all elements of the crime, the only outstanding legal issue is defendant's collateral attack on the underlying deportation order. For the reasons that follow, defendant's Motion to Dismiss the Indictment has been denied.

### A. <u>Standard of Review</u>

A defendant charged with illegal reentry can collaterally attack his underlying deportation order if and only if he can demonstrate that: (1) he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). The defendant has the burden to satisfy all three requirements. If he meets his burden, "the illegal

reentry charge must be dismissed as a matter of law." United States v. El Shami, 434 F.3d 659, 663 (4th Cir. 2005).

### B. Analysis

Khan claims that his underlying deportation order, for which he did not seek timely review in 2011, is invalid and the current illegal reentry charge should be dismissed. Because Khan cannot meet any of the three requirements for collaterally attacking a deportation order, Khan's Motion to Dismiss the Indictment has been denied.

Khan argues that he is excused from having to meet the initial two requirements—that he exhausted his administrative remedies and that his deportation proceedings improperly deprived him of the opportunity for judicial review—because the IJ never notified him of his right to appeal. Khan maintains that this failure "constitutes a complete deprivation of administrative and judicial review within the meaning of section 8 U.S.C. § 1326(d)." Def. Mem. 5. To support this proposition, Khan cites United States v. Mendoza-Lopez, 481 U.S. 828, 840 (1987), El Shami, 434 F.3d at 664, and United States v. Lopez-Collazo, 105 F. Supp. 3d 497, 513 (D. Md. 2015), rev'd on other grounds and remanded, 824 F.3d 453 (4th Cir. 2016). These cases establish a rule that failure to satisfy the first two requirements of § 1326(d) "must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." Lopez-Collazo, 105. F. Supp. 3d at 513 (internal quotation marks omitted).

The facts of the cases Khan cites only serve to highlight the high bar for excusing a failure to exhaust. See Mendoza-Lopez, 481 U.S. at 831 & n.4, 840 (holding that aliens proceeding pro se in deportation proceedings were not adequately advised of their right to apply for suspension of deportation when the IJ did not answer one of their questions about the process, addressed the wrong alien when discussing the remedy, would not tell them how much

6

time they had to apply for the remedy, and did not provide any further explanation when one of the aliens asked a question in the proceedings that demonstrated he did not understand the concept of suspension of deportation); El Shami, 434 F.3d at 664 (holding that an alien's failure to exhaust was excused when the government never sent him notice of the deportation hearing, for which did not appear, and he did not find out he was being deported until he received a copy of the deportation order months after the time for seeking review had passed); Lopez-Collazo, 105 F. Supp. 3d at 512-13 (holding that an alien's failure to exhaust was excused when the alien, without the assistance of a lawyer, had signed a waiver of the right to appeal that was written and explained only in English even though the alien understood very little English).

As the government correctly argues, Khan's deportation proceedings differed starkly from the circumstances in each of the three cited cases. Khan received notice of the proceedings; had the assistance of a lawyer throughout the deportation proceedings, which included multiple lengthy hearings and written decisions; and heard his lawyer and the IJ explicitly discuss the possibility of appealing the IJ's rulings.[4]

Khan's decision to forgo an administrative appeal and not to timely seek judicial review constituted a valid waiver of his rights. A "general advisement of appellate rights is sufficient to put an alien on notice that further judicial remedies may be available." United States v. Garcia, No. 1:15-cr-59, 2016 WL 4054926, at *3 (E.D. Va. July 26, 2016). As the audio recordings of Khan's removal hearings demonstrate, Khan received more than a general advisement of appellate rights. Indeed, Khan's lawyer explicitly discussed his intent to appeal with the IJ. Gov't

---

[4] As the government points out, there is nothing in the record to indicate that Khan waived his right to appear at the hearings, but it is unclear from the audio recordings of the hearings whether Khan was physically present or appeared by videoconference. See Def. Mem. 3 n.1. At oral argument, Khan's counsel stated that Khan was not physically present at the hearings but did not dispute that he participated in them, whether by videoconferencing or some other remote means.

Opp. Ex. B. Therefore, any decision Khan made after these proceedings—and after listening to this discussion and, presumably, going over his options with his lawyer[5]—to forgo an appeal was made knowingly and voluntarily. Therefore, Khan has not established that his failure to exhaust his administrative and judicial remedies is excused and has not satisfied either of the initial two requirements for a collateral attack on his deportation order.

Furthermore, Khan cannot show that the entry of his deportation order was fundamentally unfair, which independently defeats his motion. To show fundamental unfairness, Khan needs to demonstrate that "(1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." El Shami, 434 F.3d at 664 (internal quotation marks omitted). Khan cannot make either showing.

Khan appears to identify two alleged due process violations—that the IJ "misapplied the law" by following the Silva-Trevino framework, which was later rejected by the Fourth Circuit and withdrawn by the Attorney General, Def. Mem. 6-7, and that the IJ failed to advise Khan of his right to appeal, id. at 8. Neither alleged violation is persuasive. Although the Silva-Trevino framework was later rejected, an "error of law, without more, will ordinarily not rise to the level of a due process violation." Lopez-Collazo, 824 F.3d at 467 (internal quotation marks omitted). Khan has not identified any special circumstances that would lead the Court to reject the ordinary rule and find that the IJ's use of a framework promulgated by the Attorney General violated due process. In addition, as discussed above, Khan, who was represented by counsel, had appropriate notice of his right to appeal.[6]

---

[5] Khan has not claimed in the present case—or, as far as the Court is aware, in any other case—that his previous immigration lawyer was ineffective.

[6] Even if Khan had not been advised of the right to appeal, there is "no stand-alone right to notice of the availability of judicial review" because "due process is not offended by the failure to provide notice of judicial remedies that are readily available in case law and statutes." United

Similarly, Khan cannot show that he suffered prejudice as a result of these alleged due process errors. To "meet the actual prejudice requirement, he must demonstrate that, but for the errors complained of, there was a reasonable probability that he would not have been deported." Lopez-Collazo, 824 F.3d at 462. This analysis must be conducted based on "the law as it was understood at the time of" removal; therefore, if the "removal order was actually premised on the faithful application of existing law," there can be no prejudice. Id. at 467. In this case, the Fourth Circuit did not reject the Silva-Trevino framework until after Khan was deported, and even Khan appears to concede that the IJ properly applied that framework to the facts of Khan's case. See Def. Mem. 7 (arguing that the IJ erred because it "follow[ed]" the Silva-Trevino framework, not that the IJ applied the framework in an erroneous way). Because the IJ faithfully applied the law as it stood at the time of Khan's removal proceedings, Khan cannot demonstrate prejudice.

Khan has not established that his failure to exhaust his administrative or judicial remedies should be excused, that there were due process errors in his deportation proceedings, or that any alleged due process errors resulted in actual prejudice. As such, he cannot satisfy the § 1326(d) factors required to allow him to collaterally attack his conviction.

III. CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss the Indictment has been DENIED.

Entered this 20 day of October, 2017.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

---

States v. Munoz-Giron, 943 F. Supp. 2d 613, 621 (E.D. Va. 2013) (internal quotation marks omitted).

9